**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

C.A. No. 1:23-cv-00057

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF THE
APPLICATION FOR ORDER
PURSUANT TO
28 U.S.C. § 1782 PERMITTING
CFE INTERNATIONAL LLC TO
ISSUE SUBPOENAS FOR THE
TAKING OF A DEPOSITION AND
THE PRODUCTION OF
DOCUMENTS FROM ARBOR
GLEN CONSULTING, LLC**

*In re* Application of

CFE International LLC,

                    Applicant,

Arbor Glen Consulting, LLC,

                    Respondent.

REED SMITH LLP
401 Congress Avenue
Suite 1800
Austin, TX 78701

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for Applicant CFE International LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

I.      The Corrupt Award of the Waha Connector and Waha Supply Agreements ................... 3

II.     Arbor Glen's Role in the Award of the Waha Connector Agreements and the
Related Waha Supply Agreement ..................................................................................... 4

III.    The Mexican Criminal Proceeding ................................................................................. 7

IV.   CFEi's Prior Application and Arbor Glen's Motion to Quash ........................................ 8

V.    The Application ............................................................................................................. 10

ARGUMENT ................................................................................................................... 11

I.      CFEi's Application Meets the Statutory Requirements for Section 1782 ...................... 11

II.     Each of the *Intel* Factors Supports Granting the Application ........................................ 13

       A.    Arbor Glen Is Not a Participant in the Mexican Criminal Proceeding ................ 14

       B.    The Mexican Authorities Are Receptive to U.S. Judicial Assistance ................... 16

       C.    CFEi Is Not Circumventing Foreign Proof-Gathering Restrictions .................... 17

       D.    The Discovery Sought Is Not Unduly Intrusive or Burdensome ......................... 18

       E.    The Application Is Consistent With the Twin Aims of Section 1782 ................. 20

CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
  2018 WL 2849724 (S.D.N.Y. June 11, 2018) ...........................................................13, 18, 20

*In re Ex Parte Application of CFE Int'l LLC*,
  No. 22-cv-00429-LY-ML (W.D. Tex.) ..................................................................................3

*In re Application of Eurasian Bank Joint Stock Co.*,
  2015 WL 6438256 (N.D. Tex. Oct. 21, 2015) ....................................................................16

*In re Application of Grupo Qumma, S.A. de CV*,
  2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) ........................................................................17

*In re Caceres*,
  2020 WL 2523120 (S.D. Miss. May 18, 2020) ...................................................................17

*CFE Int'l* v. *Turrent*,
  No. 22-CV-3385 (S.D. Tex.) ..........................................................................................11, 16

*In re Dep'ts of Antioquia, et al.*,
  2017 WL 6557417 (S.D. Fla. Oct. 27, 2017) ......................................................................13

*Ecuadorian Plaintiffs* v. *Chevron Corp.*,
  619 F.3d 373 (5th Cir. 2010) ..............................................................................................16

*Evenstar Master Fund* v. *Cao*,
  2022 WL 476095 (D. Nev. Feb. 15, 2022) ..........................................................................15

*Grupo Mexico SAV De CV*,
  2014 WL 12691097 (N.D. Tex. Oct. 17, 2014) ...................................................................17

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .......................................................................................14, 15, 17, 20

*In re Kuwait Ports Auth.*,
  2021WL 5909999 (S.D.N.Y. Dec. 13, 2021) ......................................................................15

*Matter of App. of O2CNI Co.*,
  2014 WL 689082 (N.D. Cal. Feb. 21, 2014) .......................................................11, 14, 16, 19

*Med. Corp.* v. *Google, LLC*,
  2022 WL 5122954 (N.D. Cal. Oct. 4, 2022) ..................................................................11, 19

*Mees* v. *Buiter*,
      793 F.3d 291 (2d Cir. 2015)................................................................18

*In re Microsoft Corp.*,
      428 F. Supp. 2d 188 (S.D.N.Y. 2006).................................................17

*Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*,
      2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) .....................................17

*Minis* v. *Thomson*,
      2014 WL 15999947 (D. Mass. Apr. 18, 2014) ...................................15

*Tex. Keystone, Inc.* v. *Prime Nat. Res., Inc.*,
      694 F.3d 548 (5th Cir. 2012) ..............................................................14

*In re Vinmar Overseas, Ltd.*,
      2020 WL 4676652 (S.D.N.Y. Aug. 12, 2020) ....................................16

**Statutes**

28 U.S.C. § 1782................................................................................ *passim*

**Other Authorities**

Fifth Amendment ...............................................................................16

## INTRODUCTION

CFE International LLC ("CFEi"), a Texas-based natural gas company and wholly owned subsidiary of the state-owned electric utility of Mexico, Comisión Federal de Electricidad ("CFE"), seeks, through this application (the "Application"), an order pursuant to 28 U.S.C. § 1782 granting targeted discovery from Arbor Glen Consulting, LLC ("Arbor Glen") for use in an ongoing foreign criminal proceeding in Mexico. A prior application by CFEi seeking broader discovery from Arbor Glen (the "Prior Application") was quashed but, as described herein, this Application is based on facts and circumstances that have developed and changed since the Prior Application.

Specifically, CFEi seeks discovery in aid of a criminal investigation conducted by Mexico's Office of the Special Anti-Corruption Prosecutor (the "FGR") of former CFE and CFEi executives Guillermo Turrent Schnaas ("Turrent") and Javier Gutiérrez Becerril ("Gutiérrez"), and a related criminal case in Mexico against Gutiérrez and another former CFE employee, José Guadalupe Valdez García (Valdez García) (the "Mexican Criminal Proceeding"). The Mexican Criminal Proceeding arises out of a complaint filed by CFEi alleging that Turrent and Gutiérrez corruptly awarded significant CFE natural gas contracts (the "Waha Connector Agreements") to subsidiaries of WhiteWater Midstream, LLC (together with its subsidiaries and affiliates, "WWM") in December 2016 in violation of Mexican law. Turrent and Gutiérrez effectuated the awarding of the Waha Connector Agreements to WWM, as well as a contract with WWM to supply gas via the Waha Connector which was negotiated in concert with and at the same time as the Waha Connector Agreements (the "Waha Supply Agreement"), with the assistance of Arbor Glen. Arbor Glen, a consulting firm founded by Turrent's and WWM-founder Matthew Calhoun's ("Calhoun") friend and former colleague Arlin Travis ("Travis"), worked simultaneously for WWM and CFEi on both the Waha Connector and Supply Agreements.

1

The Prior Application was quashed on two grounds: that the scope of discovery sought was too broad and the concern that materials obtained in discovery could potentially be used in other U.S. litigations.  This Application addresses both grounds.  CFEi has narrowed both the substantive and temporal breadth of the discovery sought.  CFEi is also prepared to enter into a robust protective order.

District Court Judge Lee Yeakel found that the Prior Application otherwise satisfied all of the statutory criteria set forth in Section 1782:  (1) Arbor Glen is located in this district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the Application is made by an "interested person," CFEi.  In addition, since the Prior Application, new evidence has further strengthened those findings.  For example, the prosecutor in charge of the Mexican investigation has written a letter making crystal clear that her office has "decided to pursue criminal action against" Gutiérrez and Valdez Garcia because "the investigative file" established that an "act has been committed stipulated in law as a crime," and has therefore requested "an arraignment hearing against [Gutiérrez] and [Valdez Garcia] for the crime of [i]nappropriate use of powers and faculties provided for in [Mexican law] in the form of a public official who inappropriately contracted the acquisition of services using public funds."  (Declaration of Harris Fischman ("Fischman Decl.") ¶ 3.)  The prosecutor further confirms in her letter that CFEi, as a victim and party to the Mexican Criminal Proceeding, has the right to submit evidence in that proceeding, that the FGR is receptive to evidence from any party to the proceeding, and that this evidence would be "admitted and examined during the proceeding as provided in law."  (*Id*. at 5.)

Because all of the statutory requirements have been met, the discretionary factors favor granting discovery, and the two grounds upon which the District Court granted the motion to quash the Prior Application have now been addressed, the Application should be granted.

## FACTUAL BACKGROUND[1]

### I.    The Corrupt Award of the Waha Connector and Waha Supply Agreements

CFEi is a U.S.-based natural gas company formed in 2015.  (Aponte Decl. ¶¶ 9–10.)  CFEi is a wholly owned subsidiary of CFE, and operates as CFE's international trading arm, procuring natural gas in the U.S. market for transport to Mexico.  (*Id.* ¶¶ 10, 20.)  Turrent joined CFE in January 2013, and served as Director of Modernization through September 2016.  (*Id.* ¶ 31.)  He also served as CEO of CFEi from June 2015 until December 2018.  (*Id.*)  Gutiérrez joined CFE in April 2014, and served as Subdirector of Modernization through February 2017.  He also served as COO of CFEi from June 2015 until December 2018.  (*Id.*)

As set forth in detail in the Prior Application, between May and December 2016, Turrent and Gutiérrez used their positions as public servants at CFE and CFEi to improperly award the Waha Connector Agreements, valued at hundreds of millions of dollars, to WWM, a company founded by Calhoun, without complying with the Mexican constitutional and criminal procurement regulations that govern public contracts.  (Aponte Decl. ¶¶ 30–33.)  Calhoun had long-standing professional and personal relationships with both Gutiérrez and Turrent.  Prior to awarding the contracts, CFE was obligated to undergo a public tender process, but instead, Gutiérrez and Turrent committed to award the lucrative CFE contracts to WWM and then

---

[1] The relevant factual background was set forth in the Prior Application, and those facts are incorporated herein by reference.  Arbor Glen disputed none of the facts in the Prior Application. Unless otherwise indicated, the facts in this section were originally set forth in pages 3–18 of the declaration of Sam Anson ("Anson Decl."), *see* Dkt. No. 5, pages 2–12 of the declaration of Fernando Aponte Martínez ("Aponte Decl."), *see* Dkt. No. 4, pages 3–6 of the supplemental declaration of Fernando Aponte Martínez ("Aponte Supp. Decl."), *see* Dkt. No. 36-1, and pages 2–3 of the second supplemental declaration of Fernando Aponte Martínez ("Second Supp. Decl."), *see* Dkt. No. 47-2.  These facts are supplemented by those set forth in the Fischman Decl.  "Dkt. No." refers to the docket numbers associated with the Prior Application, *In re Ex Parte Application of CFE Int'l LLC*, No. 22-cv-00429-LY-ML (W.D. Tex. May 4, 2022).

implemented a sham bidding process to cover up the improper award. (Anson Decl. ¶¶ 71–80.) Shortly after CFE awarded the contracts, they were transferred to CFEi. (Aponte Decl. ¶ 30.)

At the same time Turrent and Gutiérrez negotiated the Waha Connector Agreements, they also negotiated the related Waha Supply Agreement with WWM that gave WWM the right to deliver to CFEi one million MMBtu per day of natural gas to CFEi for a 15-year term via the Waha Connector. (Anson Decl. ¶ 49.) CFEi later issued a public RFO for the Waha Supply Agreement (the "Waha Supply RFO") in an effort to conceal that it had already agreed to award the contract to WWM in circumvention of required procurement processes. Unsurprisingly, both the Waha Connector and Waha Supply Agreements were awarded to WWM by CFE, three months apart.

## II.    Arbor Glen's Role in the Award of the Waha Connector Agreements and the Related Waha Supply Agreement

The award of the Waha Connector Agreements was part of a scheme by Turrent, Gutiérrez, and Calhoun to profit at the expense of CFE and CFEi by awarding WWM not only those pipeline construction and transportation agreements, but also the related Waha Supply Agreement to deliver billions of dollars of gas via the Waha Connector. As set forth below, Travis, through Arbor Glen, furthered the scheme by providing consulting services for both CFEi and WWM when CFEi and WWM were negotiating the Waha Connector Agreements and the related Waha Supply Agreement.

In April 2016, Turrent and Gutiérrez began negotiating what would become the Waha Supply Agreement. (Anson Decl. ¶ 37.) On May 30, 2016, Turrent signed a Memorandum of Understanding with WWM (the "May 2016 MOU") that laid out terms for a long-term gas supply contract—what became the Waha Supply Agreement—and "associated asset management

agreements"—what became the Waha Connector Agreements.[2]  In July 2016, less than two months after Turrent signed this MOU, CFEi formally retained Travis, through Arbor Glen, to provide consulting services related to natural gas marketing and trading.[3]  (Anson Decl. ¶ 28.)  Travis had a nearly 20-year-long relationship with Turrent and Calhoun.  Travis and Turrent worked together in San Diego at Sempra Energy in the late 1990s before moving together to vice president positions at Shell Energy in 1999.  Calhoun joined them at Shell the following year in 2000 as an analyst and trader.  Travis worked at Shell through 2006, while Turrent and Calhoun left in 2004.  (Anson Decl. ¶ 26.)

On July 20, 2016—two days after CFEi engaged Travis through Arbor Glen—Travis drafted the initial RFO for the Waha Supply RFO, the contract which Turrent and Gutiérrez had already predetermined to award to WWM.  (*Id*. ¶ 38.)

On August 5, 2016, WWM sent Turrent a draft Precedent Agreement (the "August 2016 Precedent Agreement") that established that WWM would build, own, and operate what would become the Waha Connector.  (*Id.* ¶ 39.)  The Precedent Agreement stated that its terms were "pursuant to the [May 2016] Memorandum of Understanding."  (*Id.*)  The effective date of the draft agreement was August 12, 2016.  (*Id.* ¶ 40.)  Subsequent to Turrent receiving that draft agreement for WWM to build and transport gas along the Waha Connector, Gutiérrez purportedly

---

[2] The Waha Connector Agreements include an asset management component.  (Anson Decl. ¶ 37.)

[3] Although CFE was the initial signatory to the Waha Connector Agreements in December 2016, Turrent and Gutiérrez held simultaneous positions at CFE and CFEi during the negotiations, and they authorized the transfer of the Waha Connector Agreements from CFE to CFEi in February 2017, just three months after the contracts were signed.  (Aponte Decl. ¶¶ 30–31.)  While Turrent and Gutiérrez were negotiating with WWM during the relevant period, there does not seem to have been a meaningful, day-to-day delineation regarding whether they were negotiating on behalf of CFE or CFEi.  (Anson Decl. ¶ 20.)  Similarly, although Arbor Glen's contractual arrangement was with CFEi, Arbor Glen consulted on both CFE and CFEi projects.  (*Id.* ¶ 28.)

solicited bids for the Waha Connector Agreements from two other companies, although he and Turrent had predetermined to award that contract to WWM.

On September 22, 2016, CFEi and WWM arranged a "Lateral Kick-Off" meeting to commence finalizing the Waha Connector Agreements, and Travis (through his Arbor Glen email address) was listed as the "Chair" on the calendar invite for this "kick-off" meeting, presumably as the one who sent the invite.  (*Id.* ¶ 42.)  Amongst others, Gutiérrez and Calhoun attended the meeting.  Notably, the meeting between CFEi and WWM was scheduled *before* CFEi even received WWM's formal bid on the contract or one of the other competing bids that Gutiérrez had solicited.  More generally, Travis's Arbor Glen email appeared on correspondence throughout the Waha Connector negotiations.  (*Id.* ¶ 45.)

On October 11, 2016, WWM submitted its bid for the Waha Supply RFO—an RFO which Travis had drafted on behalf of CFEi two months earlier.  (*Id.* ¶ 47.)  According to document metadata, Travis, whose firm Arbor Glen was consulting for WWM at the same time it was consulting for CFEi, was also the author of WWM's October 11 bid in response to that same RFO. (*Id.*)

As discussed above, in December 2016, CFEi formally executed the Waha Connector Agreements with WWM.  (*Id.* ¶ 19.)  In March 2017, CFEi finalized the Waha Supply Agreement with WWM.  (*Id.* ¶ 49.)

On May 17, 2017, Travis sent an email to Turrent, Gutiérrez, and others explaining that "[a]s discussed and by mutual agreement," Arbor Glen was terminating its consulting services to CFEi as of May 30, 2017.  (*Id.* ¶ 28.)  That same month, Travis began work as WWM's Senior Vice President of Business Development.  (*Id.* ¶¶ 28, 30.)  He remains a WWM employee as of the date of this submission.

### III.   The Mexican Criminal Proceeding

In December 2020, CFEi discovered irregularities in the award of the Waha Connector Agreements to WWM.  (Aponte Decl. ¶¶ 30–33.)  CFEi's subsequent investigation revealed extensive personal and business connections among Turrent, Gutiérrez, and Calhoun, which raised questions about Turrent's and Gutiérrez's motive in awarding the contracts.  (*Id.* ¶¶ 31–33; Aponte Supp. Decl. ¶¶ 3–4.)

In August 2021, CFEi submitted a criminal complaint about the award of the Waha Connector Agreements to the FGR, which thereafter began investigating Gutiérrez, Turrent, and Valdez García.  (Aponte Decl. ¶ 5.)  In February 2022, the FGR initiated a hearing before a court to present *imputaciones*—initial formal charges—against Gutiérrez and Valdez García for the crime of "[i]nappropriate use of powers and faculties."  (Aponte Supp. Dec. ¶ 7; Fischman Decl. ¶ 3.)  Prosecutors continue to investigate Turrent.  (Aponte Supp. Dec. ¶ 13.)  The court held hearings in Mexico in May 2022 and August 2022, each of which was adjourned in the middle of the proceeding at Gutiérrez's request to allow more time to address discovery issues.  (*Id.* ¶¶ 8–10; Second Supp. Decl. ¶ 5.)  In adjourning the August 2022 hearing to October 26, 2022, the court warned the defendants that they would be fined if they sought a third adjournment on the same grounds.  (Second Supp. Decl. Ex. 1.)  On October 24, 2022, two days before the scheduled hearing, the court again adjourned the hearing upon Gutiérrez's request.  (Fischman Decl. ¶ 4.)  This time, Gutiérrez claimed that a medical issue prevented him from attending.  (*Id.*)  The Mexican court ordered the FGR to investigate the legitimacy of Gutiérrez's claim and is in the process of scheduling the next court hearing.  (*Id.* ¶ 6.)

After the Prior Application was decided, the FGR issued a letter on December 14, 2022 (the "FGR Letter") stating unequivocally that it has "decided to pursue criminal action against" Gutiérrez and Valdez Garcia, given that "the investigative file" established that a crime

had been committed.  (*See* Fischman Decl. ¶ 3.)  The letter also states that the FGR has requested "an arraignment hearing against [Gutiérrez] and [Valdez Garcia] for the crime of [i]nappropriate use of powers and faculties provided for in [Mexican law] in the form of a public official who inappropriately contracted the acquisition of services using public funds." (*Id.*)  Under Mexican law, as confirmed in the FGR letter, CFEi, as an "injured party" and victim complainant, has the right to present evidence in aid of the ongoing investigation and during all stages of the court proceeding.  (*Id.* ¶ 5.)  Exercising these rights, CFEi and CFE, along with their counsel, participated in each court hearing in their capacity as victims under Mexican law.  (Aponte Supp. Decl. ¶¶ 8–10; Second Supp. Decl. ¶¶ 3–4.)

## IV.    CFEi's Prior Application and Arbor Glen's Motion to Quash

In May 2022, CFEi filed the Prior Application seeking discovery from Arbor Glen pursuant to Section 1782 for use in the Mexican Criminal Proceeding.  (Dkt. No. 2.)  After Magistrate Judge Mark Lane granted the application (Dkt. No. 12.), Arbor Glen moved to quash the prior subpoenas (the "Prior Subpoenas") on multiple grounds, including that CFEi intended to use the discovery for an arbitration that WWM had initiated in 2021 about a commercial contract dispute with CFEi.  (Dkt. No. 33.)  Arbor Glen further argued that CFEi had not shown discovery was needed in Mexico because the FGR had not expressed interest in the discovery or tried to obtain it themselves.  (*Id.*)  Notably, Arbor Glen never disputed any of the facts surrounding Arbor Glen's involvement in the Waha Connector and Waha Supply Agreements: that Arlin Travis represented CFEi in negotiations with WWM while simultaneously working for WWM, including when CFEi and WWM negotiated the Waha Connector and Waha Supply Agreements.  (Anson Decl. ¶¶ 26–48.)  Indeed, as discussed, Travis was listed as the "chair" of a "kick-off" meeting between CFEi and WWM to commence the finalization of WWM's bid for the Waha Connector.

(*Id.* ¶ 42.)  Nor did Arbor Glen deny that Travis drafted CFEi's Request For Offers for the Waha Supply Agreement and then drafted WWM's winning bid for that same contract.  (*Id.* ¶¶ 38, 47.)

The Magistrate Judge held a hearing on both Arbor Glen's motion to quash and a similar motion filed by Antaeus Group LLC ("Antaeus"), another entity from whom CFEi sought discovery for use in the Mexican Criminal Proceeding.  (Dkt. No. 40.)  During the hearing, Judge Lane questioned CFEi's application on numerous grounds, but agreed that the evidence sought from both entities would be relevant to the Mexican Criminal Proceeding, stating: "There's no question that any prosecutor would want . . . what you're asking for here."  (Tr. 33:6–25.)  During the hearing, counsel for Antaeus indicated that it would be satisfied by a protective order that would only allow the use of documents in other proceedings upon a showing of good cause.  (Tr. 7:13–25; 45:18–46:10; 49:22–24.)[4]  CFEi informed the Court that the terms of the protective order that Antaeus requested were acceptable to CFEi.  (Tr. 67:11–15.)  The Court declined to issue that protective order, stating that it was "too late" and that "the time to forge compromise is before the hearing."  (Tr. 4:18–5:4, 12:13–17, 67:16–25.)

The Magistrate Judge recommended that the District Court quash the subpoenas. (Dkt. No. 45 (the "Report").)  The Report stated that CFEi had failed to meet the statutory requirements of Section 1782 because there was insufficient evidence to establish that a "foreign proceeding" was taking place in Mexico and because CFEi might use discovery from that proceeding in some other, unidentified proceeding.  (*Id.* at 9–12.)  The Report also asserted that, if the discovery CFEi sought were for use in the Mexican Criminal Proceeding, then the Mexican prosecutors would have sought it themselves, but they had given no indication of interest in the

---

[4] Counsel for Arbor Glen did not address the appropriate scope of a protective order at the hearing.

evidence.  (*Id.* at 15.)  Finally, the Report concluded that the discretionary *Intel* factors weighed

against discovery.  (*Id.* at 17.)  CFEi filed objections to the Report.  (Dkt. Nos. 48, 53.)

On December 6, 2022, Judge Yeakel granted Arbor Glen's motion to quash.

(Dkt. No. 55 ("Order").)  In doing so, however, the court found that each statutory requirement of

Section 1782 had in fact been met.  Specifically, the court held that the "Mexican criminal

investigation at issue qualifies as a foreign 'proceeding' for which § 1782 may be invoked" and

that "evidence related to the award of the Waha Connector Agreements in 2016 is relevant to the

[FGR's] investigation into those contracts."  (*Id.* at 3–4.)  But the court nevertheless quashed the

subpoenas based upon "consideration of the non-exhaustive *Intel* factors and the circumstances at

issue."  (*Id.* at 5.)  The court specifically noted that the scope of discovery sought was overbroad

and that there existed the potential for CFEi to seek to use materials obtained from Arbor Glen in

other pending litigations in the United States.[5]  (*Id.*)  Neither party appealed that decision.

## V.    The Application

The Application addresses both of the grounds articulated by Judge Yeakel for

quashing the Prior Application.  The discovery sought in the requested subpoenas is narrower than

prior requests, which CFEi respectfully submits already were narrow.  Rather than request

documents concerning "any projects or transactions [sic] for which Arbor Glen provided services

to CFE, or about which Arbor Glen received any information from CFE," CFEi has narrowed its

requests to documents about Arbor Glen's work for CFEi and for WWM concerning four

enumerated contracts and documents—(1) the Waha Connector Agreements; (2) the Waha Supply

---

[5] The court's discussion of overbreadth and use in other litigation appears to have focused on
Antaeus.  The court's opinion does not refer to Arbor Glen in its analysis.  (*See* Order at 5.)

Agreement; (3) the August 2016 Precedent Agreement; and (4) the May 2016 MOU. The subpoenas have also narrowed the relevant time period from one year to less than six months.

CFEi is also prepared to agree to an even more restrictive protective order than what Antaeus had requested at the hearing on the Prior Application, which was an order that would prohibit CFEi from using materials in other proceedings absent a showing of "good cause" and leave of court. (Tr. 45:18–46:15.) Specifically, CFEi is willing to agree to an order in which CFEi would be prohibited *under any circumstances* from using any Section 1782 discovery in the WWM arbitration, CFEi's ongoing civil litigation against Turrent and Gutiérrez (*CFE Int'l LLC* v. *Turrent*, No. 22-cv-3385 (S.D. Tex.)), and any other U.S. civil litigation between CFEi and WWM, Arbor Glen, Turrent, and Gutiérrez (the "Proposed Protective Order"). And that order would permit CFEi to use materials in other proceedings only upon a showing of "good cause" by CFEi.

## ARGUMENT

Because the Application presents a more tailored set of requests and addresses the prior court's concern about potential use of discovery in other proceedings, the Application should be granted. *See In re App. of O2CNI Co.*, 2014 WL 689082, at *2 (N.D. Cal. Feb. 21, 2014); *see also Med. Corp.* v. *Google, LLC*, 2022 WL 5122954, at *2 (N.D. Cal. Oct. 4, 2022) (granting second Section 1782 application because "it presents a more tailored request than the one previously denied by the court" and "cure[d] the legal defects identified in [the magistrate judge's] Report and Recommendation.").

## I.    CFEi's Application Meets the Statutory Requirements for Section 1782

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." To obtain discovery pursuant to Section

1782, a party must satisfy three requirements:  (1) the person or entity from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or "any interested person."  28 U.S.C. § 1782(a).

The Application satisfies each of the statutory requirements for the same reasons found by Judge Yeakel in the context of the Prior Application.  (Order at 3–4.)  As described above, there has never been a dispute about the first two requirements.  (*See* Report at 9, n.9.) With respect to the third requirement, Judge Yeakel has already held that the Mexican Criminal Proceeding "qualifies as a foreign 'proceeding' for which § 1782 may be invoked," as there is both an active court case in Mexico (a "proceeding" before a "foreign tribunal") as well as an ongoing criminal investigation (a "criminal investigation[] conducted before formal accusation").  (*See, e.g.*, CFEi's Objection to Report, Dkt. No. 47.)  And the FGR has since confirmed in writing that it is in the process of presenting formal charges to a Mexican court and that there have already been several court appearances in Mexico.  (Fischman Decl. ¶¶ 3–4.)

Moreover, and as found by Judge Yeakel, "CFEi has met its burden to show that the evidence sought by CFEi is 'for use' in the Mexican criminal investigation."  (Order at 4.)  All of the evidence CFEi seeks relates directly to the award of the Waha Connector Agreements and the interrelated Waha Supply Agreement.  As discussed in Sections I and II, *supra*, and as evidenced by the May 2016 MOU and August 2016 Precedent Agreement, the Waha Connector Agreements and the Waha Supply Agreement were inextricably linked and part of a package deal. And Arbor Glen was involved on both sides of the negotiations for and award of both contracts during the same narrow time period.

CFEi also seeks discovery relevant to show the conflicts of interest and lack of appropriate process that permeated the dealings between CFEi and WWM.  The evidence CFEi seeks is also relevant to establish the relationship among the participants in the award of the Waha Connector Agreements, to show a pattern of behavior—through improper conduct—and to put the alleged misconduct in Mexico in its full context.  These are all uses for which courts have approved Section 1782 discovery.  *See In re Dep'ts of Antioquia, et al.*, 2017 WL 6557417, at *5 (S.D. Fla. Oct. 27, 2017) (granting Section 1782 discovery for evidence of party's "past wrongdoing, even outside of the limitations period" in order to prove party's "plan and entire scheme; complete the narrative; and provide background evidence and context of the scheme"); *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *5 n.3 (S.D.N.Y. June 11, 2018) (refusing to limit Section 1782 discovery to transactions involving three artworks central to foreign proceeding because the fact that the "investigation may concern only three Works does not mean that materials and information concerning other Works or the relationship between [participants in the scheme] is irrelevant").

Further confirming the "use" of this evidence in the Mexican Criminal Proceeding, the FGR Letter has since confirmed that the FGR is receptive to evidence from any party to that proceeding, including CFEi, and that this evidence would be "admitted and examined during the proceeding as provided in law."  (Fischman Decl. ¶ 5.)

## II.    Each of the *Intel* Factors Supports Granting the Application

The Supreme Court has directed courts to consider four factors in exercising their discretion to grant a Section 1782 application:  (1) whether the entity from which discovery is being sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the "receptivity of the foreign government, court or agency to U.S. federal court assistance;" (3) whether the request is merely "an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country; and

(4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). "Several courts have observed that this discretion is informed by" the "twin aims" of Section 1782, "which are to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts.'" *Tex. Keystone, Inc.* v. *Prime Nat. Res., Inc.*, 694 F.3d 548, 553–54 (5th Cir. 2012).

Each *Intel* factor supports granting the Application. In the Prior Application, the two discretionary grounds cited as the basis for exercising discretion to quash the Prior Subpoenas were that those subpoenas were overbroad and the discovery might be used in other proceedings. The Application addresses those considerations by narrowing the request and offering a restrictive protective order. The other *Intel* factors weigh in favor of CFEi, and in several respects have been further strengthened by new evidence. Accordingly, the Application should be granted. *Matter of App. of O2CNI Co.*, 2014 WL 689082, at *1–2 (granting "substantially more narrow" subpoenas made under Section 1782 after initially quashing prior request as "too broad").

### A.    Arbor Glen Is Not a Participant in the Mexican Criminal Proceeding

The first *Intel* factor is whether the entity from which discovery is sought is a party to the foreign proceeding. There is no dispute that Arbor Glen is not a participant in or party to the Mexican Criminal Proceeding. (*See* Aponte Decl. ¶ 28.)

While Judge Yeakel did not identify this factor as weighing against CFEi, Magistrate Judge Lane stated that, while this "first factor arguably favors granting the Applications . . . because many of CFEi's requests seek information and records that would ostensibly be expected to be in the possession of Gutiérrez, Turrent, or CFE itself, the rationale of the first factor—*i.e.*, the need for foreign discovery that would otherwise be unavailable—is lessened."

(Report at 14) (internal footnote omitted).  However, CFEi cannot obtain in the Mexican Criminal Proceeding much, if any, of the evidence sought here from Arbor Glen.  (*Id.*)

As an initial matter, Arbor Glen's internal records, such as records about its dual work for both CFEi and WWM, are not available from anyone other than Arbor Glen (and only in the United States).  Similarly, correspondence between Arbor Glen and other third parties about the services Arbor Glen provided to CFE, including with respect to the Waha Connector Agreements and Waha Supply Agreement, is unlikely to be available from any party in Mexico.  And, of course, any Arbor Glen deponent would reside in the United States.  All of these documents and information are located in the United States, and are outside of CFEi's reach through recourse to Mexican courts.  *See also Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

Moreover, even if some subset of the records sought by the Application might also be possessed by CFEi or its parent, which are parties to the Mexican Criminal Proceeding, courts routinely permit a party to obtain discovery even when some of the records may already be accessible to that party.  *See, e.g.*, *Evenstar Master Fund SPC* v. *Cao*, 2022 WL 476095, at *5 (D. Nev. Feb. 15, 2022); *In re Kuwait Ports Auth.*, 2021 WL 5909999, at *11 n.13 (S.D.N.Y. Dec. 13, 2021); *Minis* v. *Thomson*, 2014 WL 15999947, at *5 (D. Mass. Apr. 18, 2014) ("[t]hat some records might be located in [the foreign jurisdiction] does not bar Petitioners' Application.").  Finally, Arbor Glen has never suggested that Gutiérrez and Turrent, the other parties to that proceeding, personally possess any responsive records.[6]

---

[6] Even if Turrent and Gutiérrez had certain responsive records, they have indicated that they would resist any effort to obtain discovery from them in Mexico by asserting a right against self-

Magistrate Judge Lane also noted a purported concern that Arbor Glen "could potentially" become a subject of the Mexican Criminal Proceeding.  (Report at 14.)  The hypothetical possibility that Arbor Glen might become a future subject of an investigation is not a sufficient basis to prevent Section 1782 discovery, particularly from a corporate entity that has no Fifth Amendment right against self-incrimination.  *See Matter of App. of O2CNI Co.*, 2014 WL 689082, at *1–2 (granting document discovery pursuant to Section 1782 notwithstanding that the subjects were suspects in the foreign investigation).  Had Congress intended to limit Section 1782 to third parties who were merely evidence custodians, as opposed to parties that had some role in the conduct at issue in the foreign proceeding, it would have done so in the statute.[7]

## B.    The Mexican Authorities Are Receptive to U.S. Judicial Assistance

Judge Yeakel did not cite the second *Intel* factor, which asks whether Mexican authorities would be receptive to U.S. judicial assistance, as a basis to quash the Prior Application.

In the absence of a clear directive that Mexican authorities would reject evidence, this factor weighs in favor of granting an application.  *See Ecuadorian Plaintiffs* v. *Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010); *see also In re App. of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *3 (N.D. Tex. Oct. 21, 2015).  Arbor Glen has never made such a showing, and now CFEi has introduced new evidence confirming FGR's receptivity to evidence from CFEi.  The FGR expressly stated in the FGR Letter that it would accept evidence presented by CFEi, as a victim to the proceeding, explaining that all evidence legally obtained by the parties "shall be

---

incrimination.  *See CFE Int'l* v. *Turrent*, 22-CV-3385 (S.D. Tex.), Dkt. No. 27, at 7, 9–10 (defendants' motion to stay, referring to their "rights against self-incrimination in Mexico").

[7] *See In re Vinmar Overseas, Ltd.*, 2020 WL 4676652, at *2 (S.D.N.Y. Aug. 12, 2020) (granting private party's application in part because there was no reason to believe subpoena target was or would become a subject of the foreign criminal investigation); *In re App. of O2CNI Co.*, 2014 WL 689082, at *1–2 (granting discovery for use against suspect in foreign criminal proceeding).

admitted and examined during the proceedings." (Fischman Decl. ¶ 5.) Moreover, other Mexican courts have accepted evidence obtained pursuant to Section 1782.[8]

## C.    CFEi Is Not Circumventing Foreign Proof-Gathering Restrictions

The third *Intel* factor asks whether a party to a foreign proceeding is trying to circumvent proof-gathering restrictions *in that proceeding*. *E.g.*, *In re Caceres*, 2020 WL 2523120, at *5 (S.D. Miss. May 18, 2020) (third *Intel* factor favored discovery for use in Honduran proceeding where there were no circumvention of discovery restrictions in Honduras); *see Intel*, 542 U.S. at 265. Judge Yeakel did not cite this *Intel* factor as a basis for quashing the Prior Application. When assessing this factor, courts sometimes examine whether the discovery is being sought as an end-run around an unfavorable rule or ruling in a foreign tribunal, or in bad faith. *See Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006).

As the FGR Letter makes clear, CFEi has the right to present the court in Mexico with relevant documents and information to assist in the proceeding. (Aponte Decl. ¶¶ 21–29; Fischman Decl. ¶ 5.) Thus, far from circumventing a discovery rule in Mexico, obtaining discovery via the Application and then submitting that evidence to the FGR is fully consistent with Mexican law. Moreover, neither Arbor Glen nor any court has identified any Mexican discovery rules that CFEi is supposedly trying to circumvent. To the extent there was previously a concern that CFEi was seeking to circumvent discovery rules in the WWM arbitration or some other U.S. litigation—which is not the relevant proceeding under this *Intel* factor—any such concern has been

---

[8] *See, e.g.*, *Grupo Mexico SAB De CV*, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014); *In re App. of Grupo Qumma, S.A. de C.V.*, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005).

fully addressed by the Proposed Protective Order, which would preclude use of discovery sought here in that arbitration or any other U.S. litigation.

And CFEi's willingness to agree to a global protective order—which is even more restrictive than what Antaeus sought during oral argument—belies any argument that CFEi does not seek discovery from Arbor Glen in good faith. *See In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *5–6 (protective order limiting the use of the discovery to specific proceedings demonstrated applicants' good faith). Moreover, as Judge Lane recognized, the evidence sought here is information that any prosecutor would want. *Cf. Mees* v. *Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) (satisfying "for use" requirement by showing materials sought were to be used "at some stage" of foreign proceeding).

### D.    The Discovery Sought Is Not Unduly Intrusive or Burdensome

The final *Intel* factor asks whether the discovery sought is unduly intrusive or burdensome. This was the basis upon which Judge Yeakel adopted the Report to quash CFEi's Prior Application. (Order at 5.) Specifically, the Court exercised its discretion to quash the Prior Application because of the breadth of the discovery sought and the potential use of such discovery in other proceedings in which CFEi is a party. (*Id.*) This Application has addressed both issues.

*First*, as discussed above, CFEi has narrowed the scope of its already narrow document and deposition requests in order to address any undue burden on Arbor Glen. CFEi now seeks documents about only Arbor Glen's work for CFE and for WWM relating to the solicitation of bids for the Waha Connector and Waha Supply Agreements, the selection of the winning bid for the Waha Connector and Waha Supply Agreements, the August 2016 Precedent Agreement, and the May 2016 MOU. These requests specifically target the conflicted work that Arbor Glen performed for CFE and for WWM during the negotiations and award of the Waha Connector Agreements and the closely related Waha Supply Agreement. Further, the timeframe for the

requests has been narrowed from one year to less than six months surrounding the negotiations of those related agreements, when Travis was consulting for both CFEi and WWM.

CFEi has also narrowed its deposition requests, removing two requests entirely[9] and narrowing the remaining one to the same enumerated contracts and documents as requested in the document subpoenas.  The documents and deposition testimony sought are squarely "related to the award of the Waha Connector Agreements in 2016" and "relevant to the [FGR's] investigation into those contracts," as Judge Yeakel previously held.  (Order at 4.)  The discovery relates to the contract named in the Mexican Criminal Proceeding, the Waha Connector Agreements, as well as the closely related and intertwined Waha Supply Agreement which was negotiated in concert and at the same time as the Waha Connector Agreements.

It is entirely appropriate for this court to now grant the Application in light of the "narrowed scope of the subpoenas."  *See Matter of O2CNI Co.*, 2014 WL 689082, at *2; *see also Med. Corp.*, 2022 WL 5122954, at *2.

*Second*, to the extent the Prior Application was quashed on the concern that the "burden" to Arbor Glen included the risk of use of discovery materials outside the Mexican Criminal Proceeding, the Proposed Protective Order provides that any materials or information produced by Arbor Glen in response to the Application cannot be used under *any circumstances* in CFEi's arbitration with WWM, CFEi's ongoing civil litigation against Turrent and Gutiérrez, and any other U.S. civil litigation between CFEi and WWM, Arbor Glen, Turrent, and Gutiérrez. And CFEi may only utilize material and information produced by Arbor Glen in other proceedings with leave of court and a showing of "good cause."  This is a more robust protective order than

---

[9] The deposition subpoena in the Prior Application, for example, included "Background information about the business of Arbor Glen Consulting, LLC" which CFEi has eliminated entirely.  (Dkt. No. 17-1.)

even Antaeus requested at the hearing on the Prior Application.  As a result, the Application does not create a "burden" related to the potential use of the discovery in other proceedings.  *See In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *5–6 (protective order restricting the use of the discovery to specific proceedings limited the burden on the party from which discovery was sought and weighed strongly in favor of granting application).

E.    **The Application Is Consistent With the Twin Aims of Section 1782**

Setting aside the specific *Intel* factors, Judge Yeakel also held that the "propriety" of granting Section 1782 discovery "under these circumstances" was "questionable" and did not serve the "twin aims" of the statute where "CFEi is a defendant in multiple arbitrations" and "has instituted a civil complaint against" Turrent and Gutiérrez.  (Order at 5.)  CFEi respectfully submits that any such consideration is addressed by the Proposed Protective Order, which prohibits CFEi from using materials obtained pursuant to the Application in those proceedings.   With that Proposed Protective Order in mind, granting the narrow Section 1782 discovery sought here would be consistent with both "aims" of Section 1782.   First, discovery would provide "efficient assistance to participants in" the Mexican Criminal Proceeding, because it would allow CFEi to exercise its right under Mexican law to provide evidence to the FGR and the Mexican court in a speedy manner.  *See Intel*, 542 U.S. at 253.  Second, granting discovery would encourage Mexican courts to provide "similar assistance" to U.S. parties, as it would show that U.S. courts will honor good-faith efforts to obtain discovery to aid in Mexican proceedings, as Congress has explicitly authorized.  *See id.*

## **CONCLUSION**

For all the foregoing reasons, CFEi respectfully submits that the Court should enter an order, pursuant to 28 U.S.C. § 1782, granting CFEi's Application seeking discovery from Arbor

Glen, and that the Court should also condition each of the subpoenas on entry of the Proposed

Protective Order.

Dated: New York, NY

      January 17, 2023

                         REED SMITH LLP

                         By: */s/  William W. Russell*
                         William W. Russell
                         401 Congress Avenue
                         Suite 1800
                         Austin, TX 78701

                              - and -

                         PAUL, WEISS, RIFKIND,
                           WHARTON & GARRISON LLP

                         Michael E. Gertzman (*pro hac vice* forthcoming)
                         Harris Fischman (*pro hac vice* forthcoming)
                         Justin D. Lerer (*pro hac vice* forthcoming)
                         David K. Kessler (*pro hac vice* forthcoming)
                         1285 Avenue of the Americas
                         New York, NY 10019-6064

                         Mark F. Mendelsohn (*pro hac vice* forthcoming)
                         2001 K Street, N.W.
                         Washington, DC 20006

                         *Attorneys for Applicant CFE International LLC*